SUPREME COURT OF GEORGIA

March 15, 2023

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

It appearing that the attached opinion decides a second-term appeal, which must be concluded by the end of the December Term, it is ordered that a motion for reconsideration, if any, must be **received** in the Supreme Court E-Filing/Docket (SCED) System **by 2:00 p.m. on Wednesday, March 22, 2023.**

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____, Clerk

NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 15, 2023

S22A1243, S22A1244. THE STATE et al. v. SASS GROUP, LLC et al.

BETHEL, Justice.

The doctrine of sovereign immunity, as enshrined in our Constitution, bars suits against the State and its employees in their official capacities unless a statute or the Constitution itself specifically waives that immunity. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). The doctrine's history in Georgia is long and sometimes winding.[1] Here, we are called upon to examine the

---

[1] See, e.g., *Gilbert v. Richardson*, 264 Ga. 744, 745 (1) (452 SE2d 476) (1994) (noting that Georgia adopted "[t]he common law doctrine of sovereign immunity" in 1784); *Intl. Bus. Machines Corp. v. Evans*, 265 Ga. 215, 216 (1) (453 SE2d 706) (1995) (holding that sovereign immunity does not bar suits seeking injunctive relief to curtail alleged illegal or ultra vires acts of government entities), overruled by *Ga. Dept. of Nat. Res. v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 596-603 (2) (755 SE2d 184) (2014); *Ga. Dept. of Nat. Res.*, 294 Ga. at 596-603 (2) (holding that sovereign immunity barred injunctive relief against the State and overruling *Evans*); *Olvera v. Univ. System of Georgia's Bd. of Regents*, 298 Ga. 425, 426-429 (782 SE2d 436) (2016) (declaratory judgment action against state agency barred by sovereign immunity); *Lathrop v. Deal*, 301 Ga. 408, 440 (III) (C) (801 SE2d 867) (2017)

1

newest chapter in this history.

In November of 2020, the people of Georgia, through the results of a ballot question posed in the general election, amended our Constitution to allow for a specific waiver of sovereign immunity. See Ga. L. 2020, Act 596, p. 917, § 1. See also Ga. L. 2021, p. 362A (setting forth referendum results). This new waiver allows citizens to sue the State (and, in provisions unrelated to this appeal, to sue local governments) for declaratory relief. See Ga. Const. of 1983, Art. I, Sec. II, Para. V (b) ("Paragraph V"). To the extent that citizens obtain a favorable ruling on their claim for declaratory relief, they may then also seek injunctive relief to "enforce [the court's] judgment." See id. at Para. V (b) (1). To take advantage of this new waiver of the doctrine of sovereign immunity, however, the Constitution provides that such actions must be brought "exclusively" against the State. See id. When a plaintiff's suit violates this exclusivity provision, the Constitution requires the suit

(extending sovereign immunity to suits against the State for declaratory and injunctive relief).

to be dismissed. See id. at Para. V (b) (2).

For reasons set forth more fully below, we hold that this exclusivity provision of Paragraph V means what it says: it requires dismissal of a lawsuit brought under that paragraph against the State if it names defendants other than the State or local governments specifically authorized by that provision. When other defendants are named in such a lawsuit, the Constitution requires that the entire suit be dismissed. Here, the plaintiffs' suit named a defendant for whom a waiver is not provided by Paragraph V. Accordingly, the Constitution requires the suit to be dismissed. We therefore vacate the trial court's grant of an interlocutory injunction, reverse the denial of the State's motion to dismiss, and remand this case with direction that it be dismissed.

## I.    *Background*

The plaintiffs in the underlying suit are purveyors of, among other things, hemp-derived products. As such, they operate in treacherous waters created by the tension among existing federal criminal law and its selective enforcement, existing state law and

3

related enforcement decisions, and the public policy battles still swirling around the use of marijuana, hemp, tetrahydrocannabinol ("THC"), cannabidiol ("CBD"), and related compounds. Plaintiffs' litigation interest is based upon a desire to affirm their right to sell certain products. More specifically, SASS Group, LLC and Great Vape, LLC (collectively, the "Plaintiffs") seek declaratory judgment affirming the legality of their actions and injunctive relief to protect their future commercial activities.

As background, in 2018, the United States Congress enacted the Agriculture Improvement Act of 2018, which, among other things, legalized the possession and distribution of hemp and hemp extracts. See Pub. L. No. 115-334, 132 Stat. 4490, and 7 USC § 1639*o* (1). That same year, the federal Controlled Substances Act was also amended to exclude the THC found in hemp from the list of controlled substances. See 21 USC §§ 802 (16) (B) (i), 812 (Schedule I (c) (17)). Several states similarly enacted legislation distinguishing hemp as a non-controlled substance, including Georgia. In 2019, the Georgia General Assembly passed the Georgia Hemp Farming Act,

4

which adopted the federal definition of hemp and hemp products and permitted their cultivation and sale under certain circumstances. See OCGA §§ 2-23-3 – 2-23-12. The hemp industry, it appears, has since taken root in Georgia. Plaintiffs are businesses in Gwinnett County, which, until recently, sold Delta-8-tetrahydrocannabinol ("Delta-8-THC"), Delta-10-tetrahydrocannabinol ("Delta-10-THC"), and other hemp-derived products that they allege fall within Georgia's definition of legal "hemp products."

On January 25, 2022, the Gwinnett County District Attorney issued a press release announcing that her office would pursue the prosecution of "individuals and businesses who engage in the possession, sale or distribution of . . . [S]chedule 1 controlled substances." The press release further described Delta-8-THC and Delta-10-THC as controlled substances. Plaintiffs allege that the District Attorney subsequently directed raids and arrests related to the possession of Delta-8-THC and Delta-10-THC, which included the seizure of millions of dollars in currency, inventory, and other property from businesses similar to Plaintiffs' businesses.

5

Plaintiffs filed a verified complaint against the State of Georgia and the District Attorney in her individual capacity in the Superior Court of Fulton County. Plaintiffs sought a judgment against the State declaring that commercial products containing cannabinoids derived from hemp, including, but not limited to, products containing Delta-8-THC, Delta-10-THC, CBD, cannabinol ("CBN"), and cannabigerol ("CBG") are "hemp products" as defined by OCGA § 2-23-3 and thus may be lawfully possessed and sold throughout Georgia. Plaintiffs also filed a motion seeking a temporary restraining order and an interlocutory injunction against the District Attorney in her individual capacity. The trial court granted Plaintiffs' request for a temporary restraining order, and, after a hearing, an interlocutory injunction against the District Attorney in her individual capacity, finding that Plaintiffs would otherwise continue to suffer economic harm as a result of the District Attorney's course of conduct described in the January 25 press release.

The Defendants filed a motion to dismiss, arguing primarily

6

that Plaintiffs' claims were barred by sovereign immunity.[2] The

Defendants argued, among other things, that the limited waiver of

sovereign immunity in Paragraph V did not apply to Plaintiffs' case

because *both* the State of Georgia and the District Attorney were

named as defendants, and Paragraph V states that an action

brought pursuant to its limited waiver must name the State

*exclusively* as the defendant. The trial court denied the motion to

dismiss.[3] The Defendants' sovereign immunity argument, however,

was not substantively addressed in the trial court's order.[4]

Following the grant of separate certificates of immediate

review, the Defendants sought leave to file interlocutory appeals

from the trial court's denial of their motion to dismiss and the trial

---

[2] The Defendants incorporated arguments made in their response to Plaintiffs' motion for interlocutory injunction regarding the lack of likelihood that Plaintiffs would prevail on the merits.

[3] Plaintiffs subsequently filed an amended verified complaint seeking declaratory and injunctive relief against the District Attorney and declaratory relief against the State.

[4] In a separate order granting Plaintiffs' motion for an interlocutory injunction, the trial court determined that Plaintiffs were likely to prevail on the merits, finding persuasive decisions in another Georgia trial court and in Texas and Kentucky that held that products containing Delta-8-THC are legal and are not considered a controlled substance.

court's grant of Plaintiffs' request for interlocutory injunction. We granted leave to seek interlocutory review, and the Defendants timely brought these appeals. Case S22A1243 concerns the trial court's grant of an interlocutory injunction. Case S22A1244 concerns the trial court's denial of the motion to dismiss filed by the Defendants.

## II.   *Analysis*

Article I, Section II, Paragraph V of the State Constitution waives sovereign immunity for certain "actions" seeking declaratory relief for alleged constitutional violations by state entities, officials, and employees specifically listed therein.[5] See Ga. Const. of 1983, Art. I, Sec. II, Para. V.[6] "Actions filed pursuant to this Paragraph"

---

[5] As noted in footnote 6 below, Paragraph V also pertains to suits against local governments. Our omission of any reference to those potential parties here is meant only to avoid confusion in addressing the questions presented by this case. Further, nothing in our analysis should be read as pertaining to a case involving multiple defendants who are all specifically delineated in the waiver provision of Paragraph V. That issue is not presented in this case, and we do not address it here.

[6] The portion of Ga. Const. Art. I, § II, Para. V relevant here provides as follows:

> (b) (1) Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of the state

must be filed "exclusively against the state and in the name of the State of Georgia." Ga. Const. of 1983, Art. I, Sec. II, Para. V (b) (2). Such actions which name "as a defendant any individual, officer, or entity other than as expressly authorized under this paragraph shall be dismissed." Id.

The crux of the dispute between the parties in this matter is

---

or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof or any county, consolidated government, or municipality of this state or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.

(2) Actions filed pursuant to this Paragraph against this state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof shall be brought exclusively against the state and in the name of the State of Georgia. Actions filed pursuant to this Paragraph against any county, consolidated government, or municipality of the state or officer or employee thereof shall be brought exclusively against such county, consolidated government, or municipality and in the name of such county, consolidated government, or municipality. Actions filed pursuant to this Paragraph naming as a defendant any individual, officer, or entity other than as expressly authorized under this Paragraph shall be dismissed.

9

the meaning of the word "action" as used in this constitutional provision. Plaintiffs argue that "action" as used here means a claim or cause of action rather than an entire lawsuit. Under that view, they say, courts determine whether the exclusivity provision is met on a claim-by-claim basis. If a claim relies on the waiver provided by Paragraph V—such as a claim for declaratory relief from the acts of a state agency—then the claim must comply with the exclusivity provision or the claim is subject to dismissal. But a different claim within the same lawsuit that does not rely on Paragraph V's waiver would not implicate the exclusivity provision. In other words, Plaintiffs say that a lawsuit can include all kinds of claims against all kinds of defendants, and the exclusivity provision requires dismissal only of claims within that lawsuit that both attempt to avail themselves of Paragraph V's waiver *and* name in that same claim a defendant other than the State (or the local government at issue).

The Defendants, by contrast, argue that "action" as used in this Paragraph means the entire case or lawsuit. Under this view, courts

determine whether the exclusivity provision is met by looking at the lawsuit as a whole. If the plaintiffs in the lawsuit try to avail themselves of Paragraph V's waiver of sovereign immunity in any way—i.e., even for one claim—then it is an "[a]ction filed pursuant to" that Paragraph and the lawsuit must be brought "exclusively against the state and in the name of the State of Georgia" (or against the relevant local government as may be the case). If a lawsuit does not comply, then the entire lawsuit must be dismissed, even if some claims within the lawsuit could have otherwise been brought on their own without relying on Paragraph V's waiver. For the reasons that follow, we agree with the Defendants that "action" as it is used in this constitutional provision refers to an entire case or lawsuit, so we reverse the trial court's denial of the Defendants' motion to dismiss and vacate the grant of the Plaintiffs' interlocutory injunction.

a. "[W]hen we consider the meaning of a constitutional provision, we must seek to ascertain the way in which the text most reasonably would have been understood at the time of its adoption,

11

reading it as an ordinary speaker of the English language would." (Citation and punctuation omitted.) *Lathrop*, 301 Ga. at 440 (III) (C). Doing so "requires careful attention to not only the language of the clause in question, but also its broader legal and historical context, which are the primary determinants of a text's meaning." *Ammons v. State*, 315 Ga. 149, 163 (3) (880 SE2d 544) (2022). Our efforts in this regard are aided greatly in the present case by the fact that the language at issue here was only recently incorporated into our Constitution. Unlike those occasions in which we have been called upon to review language as it was understood when it was adopted many years ago, we find ourselves today considering the ordinary meaning of the English language as it is understood in present-day Georgia.

"In understanding a constitutional provision, we must be mindful that constitutions are the result of popular will, and their words are to be understood ordinarily in the sense they convey to the popular mind." (Citation and punctuation omitted.) *Georgia Motor Trucking Assn. v. Ga. Dept. of Revenue*, 301 Ga. 354, 357 (2)

12

(801 SE2d 9) (2017). We therefore consider the ordinary meaning of the words as they appear in the Constitution. See id. at 356 (2) ("[W]e afford the constitutional text its plain and ordinary meaning, view the text in the context in which it appears, and read the text in its most natural and reasonable way[.]" (citation and punctuation omitted)); *Savage v. State*, 297 Ga. 627, 635 (4) (b) (774 SE2d 624) (2015) ("We similarly presume that the words used in the Constitution bear their ordinary meanings at the time those words were included."). And, of course, "it is the understanding of the text by reasonable people familiar with its legal context that is important, not whether every citizen understood the particular meanings of a constitutional provision."[7] *Elliott v. State*, 305 Ga.

---

[7] This principle articulated in *Elliott*, distilled from other cases, should not be understood as suggesting that the meaning assigned to constitutional language is based on the subjective understanding available only to some special group. On the contrary, it is always the original public meaning that controls. Thus, the reference to "reasonable people familiar with [the] legal context" is not a description of some particular or specific subset of the populace. Rather, this principle conveys that the legal context must be considered in discerning the meaning of the language, and that legal context sometimes takes work to understand. Indeed, the analysis in this case illustrates that point. When we consider the meaning of terms appearing in the Constitution – like "action" – we do not solely consider the meaning they

13

179, 207 (III) (C) (ii) (824 SE2d 265) (2019).

The ordinary-meaning question we have to answer here is whether the word "action," as used in Paragraph V, means an entire lawsuit or only a claim that is brought *in* a lawsuit. One place to look for ordinary meaning is contemporaneous dictionaries from around the time when the text was adopted. Dictionaries cannot be the definitive source of ordinary meaning in questions of textual interpretation because they are acontextual, and context is a critical determinant of meaning. See Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 70 (2012). But as long as we recognize this limitation, they offer a useful reference for any such analysis. And here, the dictionaries from the time the text was adopted generally define an "action" as a lawsuit or "proceeding," whereas a "claim" is defined as being a distinct part of

---

might have in ordinary conversation and in isolation; we must consider also the broader legal context in which these terms were adopted. The sources we consider in that analysis are not private or subjective; constitutional history, statutory history, decisional law, and similar sources are objective sources of publicly discoverable meaning properly within our consideration. And this is so whether or not every member of the public is aware of the substance of those sources.

that suit that asserts a particular demand or right. See, e.g., Merriam Webster's Collegiate Dictionary (11th ed. 2020) (defining "action" as "the initiating of a proceeding in a court of justice by which one demands or enforces one's right; *also* : the proceeding itself" and "claim" as "a demand for something due or believed to be due"); Shorter Oxford English Dictionary on Historical Principles (6th ed. 2007) (defining "action" as "[a] legal process or suit"). And the same is true if we look to legal dictionaries. See, e.g., Black's Law Dictionary (11th ed. 2019) (defining an "action" as "[a] civil or criminal judicial proceeding" and "claim" as "[a] demand for money, property, or a legal remedy to which one asserts a right; esp[ecially] the part of a complaint in a civil action specifying what relief the plaintiff asks for").

This understanding of "action" as a lawsuit or proceeding in which claims are brought finds further support in common usage. In both judicial decisions and statutes, "action" is more commonly used to refer to a "whole lawsuit" rather than a claim. See, e.g., *Joyner v. Leaphart*, 314 Ga. 1, 4-7 (2) (a) (875 SE2d 729) (2022) (referring to

15

"actions" as lawsuits and distinguishing between the two-dismissal rule's applicability to "actions" and "claims"); *McInerney v. McInerney*, 313 Ga. 462, 463 (1) (870 SE2d 721) (2022) (using the term "action" to refer to a lawsuit); *Riley v. Georgia Assn. of Club Execs.*, 313 Ga. 364, 364 (870 SE2d 405) (2022) (same); *Dept. of Pub. Safety v. Ragsdale*, 308 Ga. 210, 210 (839 SE2d 541) (2020) (same); *Plummer v. Plummer*, 305 Ga. 23, 23-24 (823 SE2d 258) (2019) (same); *RES-GA McDonough, LLC v. Taylor English Duma LLP*, 302 Ga. 444, 444-445 (807 SE2d 381) (2017) (same); *Price v. Dept. of Transp. of Georgia*, 257 Ga. 535, 536 (361 SE2d 146) (1987), superseded by constitutional amendment as stated in *Lathrop*, 301 Ga. at 422 (II) (B) ("We note the waiver speaks of 'actions' and of 'claims.' For certain actions there is a waiver of sovereign immunity. They are: (1) Those *actions* involving a *claim* against the state, or any department or agency, (2) for which liability insurance protection for such claims has been provided, (3) but only to the extent of insurance provided. So, the task is to determine if the claim asserted here is of the type described in the constitution. If it is,

16

there is a waiver of sovereign immunity, *not for the claim, but for the action*." (emphasis supplied; footnote omitted)). See also OCGA §§ 9-11-2 ("There shall be one form of action, to be known as 'civil action.'"); 9-11-3 (noting that a "civil action" commences with the filing of the complaint and case filing form); 9-2-5 (a) ("No plaintiff may prosecute two actions in the courts at the same time for the same cause of action and against the same party."); 9-2-22 ("[T]he party plaintiff may join in one action, as parties defendants, all parties who allegedly contributed in the construction of the improvements. . . ."); 9-2-61 (using the words "case" and "action" interchangeably); Davis & Shulman's, Ga. Practice & Procedure, § 1:1 (2022-2023 ed.) ("'Action,' 'suit' and 'proceeding' are often used synonymously.").

To be sure, in other instances, "action" can be understood as a reference to things other than a lawsuit, such as a claim, as Plaintiffs argue. See, e.g., OCGA § 9-3-70 (defining an "action for medical malpractice" as meaning "any claim for damages resulting from the death of or injury to any person"). Indeed, the Civil Practice

17

Act broadly defines an "action" as a "judicial means of enforcing a right." OCGA § 9-2-1. See also *Housing Auth. of Savannah v. Greene*, 259 Ga. 435, 437 (2) (383 SE2d 867) (1989) (considering a third-party complaint an "action" under OCGA § 9-2-1); *Buckler v. Dekalb County Bd. of Tax Assessors*, 288 Ga. App. 332, 333 (654 SE2d 184) (2007) (noting that an appeal qualifies as an "action"); *Jordan v. Lamberth, Bonapfel, Cifelli, Willson & Stokes, P.A.*, 206 Ga. App. 178, 179 (1) (a) (424 SE2d 859) (1992) (qualifying counterclaims as an "action"). But "action" is ordinarily and more commonly used to mean a case or lawsuit, and other contextual clues within the Constitution confirm that to be the case with respect to the specific provision at issue here.

b. Our determination that the exclusivity requirement in Paragraph V relates to lawsuits rather than claims is further confirmed by the context of other language in Paragraph V and other parts of the same section of the Constitution. "[W]hen we determine the meaning of a particular word or phrase in a constitutional provision or statute, we consider text in context, not in isolation."

18

*Elliott*, 305 Ga. at 186 (II) (B). See also *Stephens v. Reid*, 189 Ga. 372, 379 (1, 2) (6 SE2d 728) (1939) (in interpreting an amendment of the constitution, we look to "the language and arrangement of the article, section and paragraph," as well as "the object to be secured, and . . . extrinsic matters [such] as the circumstances attending its ratification, the sense in which it was understood by contemporaries, and its relation to other parts of the constitution"). We may also "refer to the rules of English grammar, inasmuch as those rules are the guideposts by which ordinary speakers of the English language commonly structure their words," and the drafters of the constitutional amendment are presumed to know the rules of grammar. (Citation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (stating the same with respect to statutory text).

In applying these principles, we note that subparagraph (b) (4) provides that "[n]o damages, attorney's fees, or costs of litigation shall be awarded *in an action* filed pursuant to this Paragraph, unless specifically authorized by Act of the General Assembly."

19

(Emphasis supplied.) Ga. Const. of 1983, Art. I, Sec. II, Para. V (b) (4). We would ordinarily say that attorney fees, litigation expenses, or damages would be awarded *in* a lawsuit at its conclusion. See, e.g., OCGA § 9-15-14 (a) ("*In* any civil *action* in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a *claim*," etc. (emphasis supplied)); *McGahee v. Rogers*, 280 Ga. 750, 754 (2) (632 SE2d 657) (2006) ("[A]n award of attorney's fees under OCGA § 19-6-2 *in this case* would require a determination whether McGahee violated the divorce decree." (citation and punctuation omitted; emphasis supplied)); *L.S. Land Co. v. Burns*, 275 Ga. 454, 457 (3) (569 SE2d 527) (2002) ("[W]e cannot hold as a matter of law that attorney's fees in this reformation case were not authorized under [OCGA] § 13-6-11."). It would not make sense, by contrast, to say that such items shall be awarded "in" a claim. In other words, "action" in subparagraph (b) (4) logically refers to an entire lawsuit. Because we presume that the same meaning of "action" applies throughout subparagraph (b),

20

*Clarke v. Johnson*, 199 Ga. 163, 164-165 (33 SE2d 425) (1945), this phrasing offers further support that "action" as used in the exclusivity provision refers to the entire lawsuit.

Additionally, other provisions of our Constitution further support interpreting "action" in Paragraph V to mean a lawsuit rather than a claim. Article I, Section II, Paragraph IX (a) authorizes enactment of the State Tort Claims Act and, in doing so, states that "the General Assembly may provide by law for procedures for the making, handling, and disposition of *actions or claims*" against the State and various state entities. (Emphasis supplied.) Georgia Constitution of 1983, Art. I, Sec. II, Para. IX (a). This authorizing language distinguishes between "actions or claims," which are set forth in the disjunctive. See *Rockdale County v. U.S. Enterprises, Inc.*, 312 Ga. 752, 766 (3) (b) (865 SE2d 135) (2021) (noting that the word "or" normally indicates an alternative and is commonly understood as a disjunctive term). Accordingly, it necessarily follows that each of these words was intended to have a different meaning, as reading "actions" to mean "claims" in this provision would render

21

one of the two words superfluous, which runs afoul of this Court's routine admonition that "courts generally should avoid a construction that makes some language mere surplusage." (Punctuation omitted.) *Middleton v. State*, 309 Ga. 337, 342 (3) (846 SE2d 73) (2020). See also *Blum v. Schrader*, 281 Ga. 238, 241 (2) (637 SE2d 396) (2006) ("[I]t is a basic rule of constitutional construction that no provision is presumed to be without meaning and that all of its parts should be construed so as to give a sensible and intelligent effect to each of them."); *Price*, 257 Ga. at 536 & n.3 (distinguishing between "action" and "claim" under a prior version of Paragraph IX). We must therefore infer from the Constitution's disjunctive use of "action or claim" in this paragraph that its drafters intended a difference in the meanings of these two words.[8] See generally *Blum*, 281 Ga. at 241 (2). And in this case, this common understanding of "action" applies with equal force to the later-added

---

[8] Indeed, other parts of our Constitution likewise distinguish an "action" from a "cause of action." Compare Ga. Const. of 1983, Art. VI, Sec. II, Para. I (using "action" and "case" interchangeably), with Art. I, Sec. I, Para. XXX (c) (1) (using "cause of action").

22

Paragraph V in the same section of our Constitution, as we presume

> that the same meaning attaches to a given word or phrase wherever it occurs in a constitution; and where a word or phrase is used in one part of a constitution in a plain and manifest sense, it is to receive the same interpretation when used in every other part, unless it clearly appears, from the context or otherwise, that a different meaning should be applied to it.

*Clarke*, 199 Ga. at 164-165. In short, other provisions of our Constitution differentiate between "action" and "claim," and this context further confirms that "action" in Paragraph V refers to a lawsuit as a whole rather than a claim in a lawsuit.

c. Plaintiffs offer a final argument based on the consequences of this reading. They point out that if "action" in Paragraph V means the whole lawsuit, then Paragraph V requires plaintiffs who wish to rely on its waiver to file a lawsuit containing only a claim or claims for declaratory relief against "the State." Any other related claims (like their claim against the District Attorney here) must be filed in a separate lawsuit, or the entire lawsuit will be dismissed—even if the related claims do not rely on Paragraph V's waiver. That reading, they contend, favors form over substance, kicks perfectly

23

viable claims out of court, and runs counter to the goal of judicial efficiency.

Plaintiffs are correct that our rules of civil practice and related doctrines generally demonstrate a preference that litigants bring all relevant claims related to their case in one action. See, e.g., OCGA §§ 9-11-13 (regarding counter- and cross-claims); 9-11-18 (joinder of claims and remedies); 9-11-19 (joinder of persons); 9-11-22 (interpleader); 9-11-24 (intervention); *Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486 (696 SE2d 667) (2010) ("The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action."). But the exclusivity provision's apparent tension with this general anti-claim-splitting preference makes sense in light of the relevant legal context and history.

In *Lathrop*, this Court made clear that

> [t]he constitutional doctrine of sovereign immunity bar[red] any suit against the State to which it has not given its consent, including suits against state

24

departments, agencies, and officers in their official capacities, and including suits for injunctive and declaratory relief from the enforcement of allegedly unconstitutional laws.

301 Ga. at 444 (IV). See also *Sustainable Coast*, 294 Ga. at 603 (2) (holding "that sovereign immunity bars the [plaintiff]'s claim for injunctive relief against the State"). However, we noted that the plaintiffs could pursue "prospective remedies . . . against state officers in their individual capacities." Id. See also *Sustainable Coast*, 294 Ga. at 603 (2) (noting that "citizens aggrieved by the unlawful conduct of public officers . . . must seek relief against such officers in their individual capacities.").

Paragraph V was enacted in the wake of *Lathrop*, which made clear that suits against state officers and employees in their official capacities were indeed barred by sovereign immunity. This constitutional provision created a new, limited express waiver of sovereign immunity for specific types of suits seeking declaratory and injunctive relief against the State. But if a plaintiff wants to avail himself of the limited waiver provided by Paragraph V, then

he must bring the action "exclusively against the state and in the name of the State of Georgia," which forecloses the option of also suing a state actor in his or her individual capacity in that same suit. Accordingly, the consequences Plaintiffs point out track the provision's language and context, including the broader context in which the constitutional amendment to Paragraph V was enacted, and therefore are not a reason to deviate from the ordinary meaning of the word "action" as used here.

d. In sum: Paragraph V provides a limited waiver of sovereign immunity "for actions in the superior court seeking declaratory relief from acts of the state" or the state entities specifically listed in Paragraph V. Ga. Const. of 1983, Art. I, Sec. II, Para. V (b) (1). Paragraph V (b) (2) further provides that actions filed pursuant to Paragraph V must be filed "*exclusively* against the state and in the name of the State of Georgia" and that "[a]ctions filed pursuant to this Paragraph naming as a defendant any individual, officer, or entity other than as expressly authorized under this Paragraph shall be dismissed." (Emphasis supplied.) See Ga. Const. of 1983,

Art. I, Sec. II, Para. V (b) (2). And, as explained above, we conclude that "actions" in this context means "lawsuit."

Accordingly, if a lawsuit is filed against the State pursuant to Paragraph V and that suit includes an independent claim against another party not specified in that paragraph's waiver provision, then the entire lawsuit must be dismissed. See id. Thus, the presence of a named defendant to whom Paragraph V's waiver does not apply is fatal to an "action" that relies on Paragraph V's waiver of sovereign immunity.

Here, because their claims against the State for declaratory and injunctive relief required Paragraph V's waiver of sovereign immunity, the Plaintiffs filed this lawsuit against the Defendants pursuant to Paragraph V. The District Attorney, in her individual capacity, was an additional named defendant not authorized by Paragraph V.[9] Because we have determined that this suit qualifies

---

[9] In briefing and at oral argument, there was disagreement between the parties over which complaint was the operative pleading that the Court ought to consider. But deciding this issue is not essential to the resolution of this case, as both complaints named the District Attorney in her individual capacity

27

as an "action" under Paragraph V, the entire case must be dismissed under the plain language of that constitutional provision.[10] See Ga. Const. of 1983, Art. I, Sec. II, Para. V (b) (2).

For these reasons, we reverse the trial court's denial of the State's motion to dismiss, vacate the order granting an interlocutory injunction as the question should not have been reached by the trial court, and remand this case with direction that it be dismissed.

*Judgment reversed and case remanded with direction. All the Justices concur.*

---

in addition to the State.

In any event, Plaintiffs' suggestion that the Court should view their amended complaint as one encompassing two separate "actions" that are joined or "consolidated" into one case under OCGA § 9-11-20 is problematic. The relevant permissive joinder provision of OCGA § 9-11-20 provides that "[a]ll persons may be joined *in one action* as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise *in the action.*" (Emphasis supplied.) OCGA § 9-11-20 (a). The statutory use of the singular to describe an action which includes permissively joined claims and/or parties does not support the conclusion that the use of "action" in the constitutional text should be understood to relate only to the *claim* against the State.

[10] Because of our holding here, we need not address arguments as to the interlocutory injunction beyond vacating the order granting relief because the matter should never have been reached. We need not also address the other arguments raised by the Plaintiffs or the Defendants, including whether the Plaintiffs may still bring a separate action against the District Attorney in her individual capacity.