**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 27, 2026**

# In the Court of Appeals of Georgia

A25A1843. HENRY COUNTY v. GREATER ATLANTA HOME
    BUILDERS ASSOCIATION, INC. et al.

MARKLE, Judge.

Greater Atlanta Home Builders Association, Inc. ("GAHBA"), Peachtree Building Group, LLC, ("PBG"), and ResiBuilt Home, LLC (collectively, "Appellees") brought a declaratory action pursuant to Article I, Section II, Paragraph V of the Georgia Constitution ("Paragraph V"), challenging two Henry County ordinances that increased the impact fees[1] for residential development. The trial court

---

[1] An impact fee is "a payment of money imposed upon development as a condition of development approval to pay for a proportionate share of the cost of system improvements needed to serve new growth and development." OCGA § 36-71-2 (8). See also OCGA § 36-71-3 (authorizing municipalities and counties that have adopted a comprehensive plan incorporating capital improvements to enact ordinances that impose impact fees as a condition for the approval of development projects).

granted their motion for partial summary judgment, and denied the County's motion for summary judgment. The trial court found Appellees had standing to bring the suit; declared the ordinances illegal; enjoined the County from enforcing them; ordered the County to disgorge and repay all fees paid pursuant to the ordinances to all payors (regardless of whether they were a named plaintiff); and awarded OCGA § 13-6-11 attorney fees to Appellees. On appeal, the County argues the trial court's order must be overturned on various grounds, including sovereign immunity, standing, and failure to exhaust administrative remedies. Because we conclude the trial court should have dismissed this case on jurisdictional grounds, we reverse in part, vacate in part, and remand the case with direction.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9–11–56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Stroud v. Hall County*, 339 Ga. App. 37, 38 (793 SE2d 104) (2016).

So viewed, Henry County first implemented a residential impact fee ordinance in 2003, and assessed an impact fee of $1,661 per dwelling. By 2021, the County

sought to update its impact fees, and hired a consultant to assist in developing a new fee schedule. In his methodology report, the consultant determined a maximum assessment in excess of $10,000 per residential dwelling. In 2022, the County enacted Ordinance No. 22-05, which instituted a new impact fee of $3,544.46 per dwelling, effective February 2, 2023. Pursuant to this ordinance, ResiBuilt paid approximately $160,000 in impact fees for a project that included multiple single family homes and townhomes. On July 23, 2024, the County enacted Ordinance No. 24-06, effective immediately, which increased the residential impact fees to $7,085.90.

Appellees filed a complaint against the County in superior court, challenging the County's most recent fee ordinances and bringing claims for declaratory judgment, injunctive relief, disgorgement, and OCGA § 13-6-11 attorney fees. Appellees then filed a motion for partial summary judgment,[2] and the County filed its motion for summary judgment. Following a hearing, the trial court granted Appellees' motion, and denied the County's motion. The trial court then declared Ordinance Nos. 22-05 and 22-06 unlawful; enjoined the County from enforcing them; ordered the County to disgorge all impact fees collected under the ordinances, and to repay *all*

_____

[2] Appellees did not move for summary judgment on their claims for violations of due process and illegal taxation.

3

payors who had remitted the fees (regardless of whether they were a named plaintiff); and awarded attorney fees under OCGA § 13-6-11 to Appellees. This appeal followed.

1. The County first argues that the trial court erred in granting disgorgement relief and attorney fees because these claims are barred by sovereign immunity. We agree.

"The doctrine of sovereign immunity, as enshrined in our Constitution, bars suits against the State and its employees in their official capacities unless a statute or the Constitution itself specifically waives that immunity." *State v. SASS Group*, 315 Ga. 893 (885 SE2d 761) (2023). See Ga. Const. of 1983, Art. I, Sec. II, Para. IX(e). The State's sovereign immunity extends to counties. *Bray v. Watkins*, 376 Ga. App. 589, 592(1) (920 SE2d 379) (2025). Sovereign immunity is a threshold issue "and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred." *McConnell v. Dep't of Labor*, 302 Ga. 18, 19 (805 SE2d 79) (2017). It is well-settled in Georgia that "without specific statutory language providing for (1) a waiver of sovereign immunity and (2) the extent of such waiver, no waiver can be shown." *Currid v. DeKalb State Ct. Probation Dep't*, 285 Ga. 184, 187 (674 SE2d 894) (2009) (emphasis omitted). See also

*Sons of Confederate Veterans v. Newton County Bd. of Comm'rs*, 368 Ga. App. 511, 516-17 (890 SE2d 468) (2023) ("sovereign immunity is waived only to the extent of the statute, which extends no further than the remedies specifically authorized by the Act") (emphasis omitted). The party seeking to benefit from a waiver of sovereign immunity bears the burden of establishing its existence. *Alred v. Ga. Pub. Def. Council*, 362 Ga. App. 465, 466 (869 SE2d 99) (2022). Our review of sovereign immunity issues is de novo. *Ga. Dep't of Nat. Res. v. Center for a Sustainable Coast*, 294 Ga. 593, 596(2) (755 SE2d 184) (2014).

Paragraph V provides a limited waiver of a county's sovereign immunity to actions for declaratory judgment, and related claims for injunctive relief.[3] Ga. Const.

---

[3] In pertinent part, Paragraph V provides a waiver of sovereign immunity

for actions in the superior court seeking declaratory relief from acts of ... any county ... or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment.

Ga. Const. of 1983, Art. I, § II, Para. V(b)(1).

of 1983, Art. I, § II, Para. V(b)(1). As relevant to this appeal,[4] Paragraph V bars awards of "damages, attorney's fees, or costs of litigation … unless specifically authorized by Act of the General Assembly." Paragraph V(b)(4).

In construing these constitutional provisions, "we afford the constitutional text its plain and ordinary meaning, view the text in the context in which it appears, and read the text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Ga. Motor Trucking Ass'n v. Ga. Dep't of Revenue*, 301 Ga. 354, 356(2) (801 SE2d 9) (2017) (citation modified).

Despite the plain language of Paragraph V(b)(1), which waives the County's sovereign immunity only as to claims for declaratory judgment and attendant injunctive relief, and subpart (b)(4), which expressly bars awards of damages and attorney fees, Appellees argue they are entitled to the disgorgement of the impact fees and the attorney fee award. We address each award in turn.

(a) *Disgorgement*.

---

[4] As the action was brought solely against the County, Paragraph V's exclusivity provision is not at issue. See Paragraph V(b)(2) (requiring declaratory actions against county officials and employees be brought solely in the name of the county).

The trial court determined that Appellees' claim for disgorgement was not barred by Paragraph V(b)(4) because the disgorgement of fees does not amount to monetary damages, but is rather restitution and, thus, "an ancillary equitable remedy." This characterization is problematic from the start because the only claim for equitable relief that is expressly permitted under Paragraph V is an injunction. Paragraph V(b)(1), (4); see *Sons of Confederate Veterans*, 368 Ga. App. at 513 ("implied waivers of sovereign immunity are not favored") (citation modified). In this vein, even if we presume the correctness of Appellees' argument here that disgorgement relief is not a monetary damage, and thus not barred by Paragraph V(b)(4) — which we do *not* hold — there is still no specific waiver of the County's immunity to a disgorgement remedy anywhere in Paragraph V.[5] See *Sons of Confederate Veterans*, 368 Ga. App. 511 at 513. See also *Currid*, 285 Ga. at 187 ("[W]ithout specific statutory language providing for (1) a waiver of sovereign immunity and (2) the extent of such

---

[5] Nor are we persuaded by Appellees' characterization of the disgorgement remedy as "akin to injunctive relief." "Injunctive relief by its nature must be prospective. If the thing sought to be enjoined in fact takes place, the grant or denial of the injunction becomes moot." *Crawford v. Ocwen Loan Servicing*, 343 Ga. App. 47, 48 (805 SE2d 119) (2017). Whereas, Appellees' claim for disgorgement seeks restitution of monies *already* paid. See *Lathrop v. Deal*, 301 Ga. 408, 434(III)(C) (801 SE2d 867) (2017) (defining retrospective relief as "monetary damages and other relief for wrongs already done and injuries already sustained").

waiver, no waiver can be shown."). And we are not permitted to insert one where there is none. *Sustainable Coast*, 294 Ga. at 597(2) (1974 state constitutional amendment deprived the courts of "the authority to abrogate or modify the doctrine, as they had when sovereign immunity was a product of the common law rather than constitutional law."). Accordingly, the trial court erred in concluding the County waived its sovereign immunity to the disgorgement claim under Paragraph V.

(b) *Attorney fees*.

The County argues that Appellees' claim for attorney fees pursuant to OCGA § 13-6-11 are similarly barred by the plain language of Paragraph V(b)(4). And, we agree. See *Ga. Motor Trucking Ass'n*, 301 Ga. at 356(2).

Nevertheless, Appellees contend that the General Assembly "specifically authorized" such an attorney fee award under OCGA § 13-6-11, and thus their claim for fees is not barred by Paragraph V(b)(4).[6] This reading conflicts with the fundamental rules of constitutional construction.

---

[6] Notably, the cases Appellees rely on predate Paragraph V. See *Liberty County v. Eller*, 327 Ga. App. 770, 772(1) (761 SE2d 164) (2014) (related claim for attorney fees is actionable if underlying claim falls within waiver of sovereign immunity); accord *Waters v. Glynn County*, 237 Ga. App. 438, 440(3) (514 SE2d 680) (1999). Paragraph V applies "to past, current, and prospective acts which occur on or after January 1, 2021." Paragraph V(b)(1).

As our Supreme Court has instructed, "a constitutional provision must be presumed to have been framed and adopted in the light and understanding of prior and existing laws and with reference to them. Constitutions, like statutes, are properly to be expounded in the light of conditions existing at the time of their adoption." *Lathrop v. Deal*,[7] 301 Ga. 408, 429(III)(B) (801 SE2d 867) (2017) (citation modified). Therefore, we presume that the drafters were aware of OCGA § 13-6-11 at the time Paragraph V was framed. Id.; *SASS Group*, 315 Ga. at 897-98 (II)(a) (interpretation of constitutional provisions "requires careful attention to not only the language of the

---

[7] In *Lathrop*, our Supreme Court explained that, prior to the enactment of Paragraph V,

> [t]he constitutional doctrine of sovereign immunity bar[red] any suit against the State to which it has not given its consent, including suits against state departments, agencies, and officers in their official capacities, and including suits for injunctive and declaratory relief from the enforcement of allegedly unconstitutional laws.

301 Ga. at 444(IV). See also *SASS Group*, 315 Ga. at 903(II)(c) (noting that "Paragraph V was enacted in the wake of *Lathrop*, which made clear that suits against state officers and employees in their official capacities were indeed barred by sovereign immunity."); *Gilbert v. Richardson*, 264 Ga. 744, 747(2) (452 SE2d 476) (1994) (Art. I, Sec. II, Para. IX(e)'s "extension of sovereign immunity to 'the state and its departments and agencies' must also apply to counties.").

clause in question, but also its broader legal and historical context, which are the primary determinants of a text's meaning.") (quotation marks omitted). Yet, this provision includes a blanket exclusion of attorney fee awards. Paragraph V(b)(4). See *Ga. Motor Trucking Ass'n*, 301 Ga. at 356(2). In other words, had the drafters intended to include an exception for attorney fees under OCGA § 13-6-11, they easily could have done so. See *Lathrop*, 301 Ga. at 429(III)(B); *SASS Group*, 315 Ga. at 897-98 (II)(a). But they did not.

Nor can the plain language of OCGA § 13-6-11 be read to "specifically authorize" an award of attorney fees "in an action filed pursuant to" Paragraph V.[8]

---

[8] Similar to our treatment of constitutional provisions, when we construe statutory language,

> we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*PTI Royston, LLC v. Eubanks*, 360 Ga. App. 263, 266(1) (861 SE2d 115) (2021) (citation modified). OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith,

Paragraph V(b)(4). See *Currid*, 285 Ga. at 187; *Sons of Confederate Veterans*, 368 Ga. App. at 516-17. As with the disgorgement remedy, Appellees failed to meet their burden to show the County waived its sovereign immunity to OCGA § 13-6-11 attorney fee awards under Paragraph V. *Alred*, 362 Ga. App. at 466. The trial court thus erred in awarding them.

2. The County next argues that the trial court erred by concluding that GAHBA had standing to sue under the doctrines of associational and dependent standing. We agree.

> Under the Judicial Power Paragraph of the Georgia Constitution, see Ga. Const. of 1983, Art. VI, Sec. I, Par. I, Georgia courts have the power to resolve only genuine controversies. For a genuine controversy to exist, and thereby invoke the State's judicial power, a plaintiff must have standing to sue. This is a jurisdictional requirement, mandating that a plaintiff show that he has a legal right at stake that requires adjudication to protect it. As the party seeking to invoke the jurisdiction of a Georgia court, the plaintiff has the burden of establishing standing. A plaintiff must assert the violation of his *own* rights and cannot merely vindicate the rights of another.

has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

*Republican Nat'l Comm. v. Eternal Vigilance Action* (hereafter, "*RNC*"), 321 Ga. 771,

775(2) (917 SE2d 125) (2025) (citation modified). See also *Wasserman v. Franklin*

*County*, 320 Ga. 624, 640(II)(A)(2) (911 SE2d 583) (2025) ("The requirement that

a plaintiff must assert a violation of her rights to maintain an action in Georgia courts

... is the bedrock requirement for invoking the judicial power granted by the Georgia

Constitution.").

(a) *Associational standing.*

The trial court concluded that GAHBA had standing to sue under the federal

doctrine of associational standing, as set forth in *Aldridge v. Ga. Hospitality & Travel*

*Association*, 251 Ga. 234 (304 SE2d 708) (1983).[9] However, the Supreme Court of

---

[9] "Associational standing is essentially a less-demanding version of third-party standing, permitting a plaintiff to sue to vindicate the rights of someone else, even if the plaintiff has suffered no injury." *RNC*, 321 Ga. at 777(2)(b). In *Aldridge*, our Supreme Court adopted the three-part test for federal associational standing:

> An association has standing to bring suit on behalf of its members when:
> (a) its members would otherwise have standing to sue in their own right;
> (b) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

251 Ga. at 236(1).

Georgia has since overruled *Aldridge*, and determined that associational standing is not "a viable theory of standing under the Georgia Constitution." *RNC*, 321 Ga. at 780(2)(b). See also *Wasserman*, 320 Ga. at 649(II)(B)(2), n. 14 (noting that the rationale for rejecting federal third-party standing would also apply to associational standing). The trial court thus erred in concluding GAHBA could maintain its suit under an associational standing theory.[10]

(b) *Dependent standing.*

Under this theory of standing, a civic association may have standing to challenge a *rezoning* decision if "they are joined by individual plaintiffs who have standing to do so," regardless of whether it owns property affected by the decision. *Lindsey Creek Area Civic Ass'n v. Consol. Gov't of Columbus*, 249 Ga. 488, 490 (292

---

[10] GAHBA argues that *RNC* should not apply to this case because its rejection of associational standing only applies to actions against the State. But this interpretation of *RNC*'s holding is too narrow. GAHBA focuses on the division dealing with community-stakeholder standing — an entirely different theory of standing, which the Court held applied only to actions against local governments, and not the State. *RNC*, 321 Ga. at 781-784(2)(c). To the extent GAHBA contends it is a community stakeholder, we are wholly unpersuaded. See *Sons of Confederate Veterans v. Henry County Bd. of Comm'rs*, 315 Ga. 39, 66-67(2)(d)(ii) (880 SE2d 168) (2022) (Sons of Confederate Veterans groups could not assert community-stakeholder standing because they "did not allege that they are citizens, residents, or taxpayers of any county, much less the counties that they sued.").

SE2d 61) (1982). Notably, Appellees point to no cases where this theory has been extended beyond zoning decisions.[11] See *Lindsey Creek*, 249 Ga. 488; *Pres. All. of Savannah v. Norfolk S. Corp.*, 202 Ga. App. 116 (413 SE2d 519) (1991); *Miller v. Fulton County*, 258 Ga. 882, 883(1) (375 SE2d 864) (1989) ("The only non-owner plaintiff we have recognized to have standing to challenge a *rezoning* decision is a civic association ... when joined by an individual plaintiff who has standing.") (emphasis added). Nor have we found any. And we decline to extend the theory to this case, which does not involve any decisions of a zoning board.[12] The trial court thus erred in concluding GAHBA had dependent standing.

3. The County next argues that the trial court erred in concluding that PBG had a justiciable controversy, and therefore could seek declaratory judgment. Specifically,

---

[11] Appellees rely on *Preservation Alliance of Savannah v. Norfolk Southern Corporation*, 202 Ga. App. 116 (413 SE2d 519) (1991), to support their position that dependent standing has been applied beyond zoning challenges. But we specifically applied a dependent standing analysis in that case because it "unquestionably involve[d] a zoning matter." Id. at 117. Appellees' point is not well taken.

[12] In light of the abrogation of associational standing in Georgia, it is questionable whether dependent standing is still a viable theory. See *RNC*, 321 Ga. at 775(2) ("A plaintiff must assert the violation of his *own* rights and cannot merely vindicate the rights of another."). However, as this is not a zoning case, we need not decide this issue here.

14

the County argues PBG's claim is too speculative to warrant declaratory relief. Again, we agree.

> Under Georgia's Declaratory Judgment Act, superior courts have the power to declare the rights of interested parties in cases of actual controversy. The purpose of the Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. There can be no justiciable controversy unless there are interested parties asserting adverse claims upon a state of facts which have accrued. To establish a legal interest sufficient to maintain standing under the Declaratory Judgment Act, a party must show that his rights are in direct issue or jeopardy. The party must show that the facts are complete and that the interest is not merely academic, hypothetical, or colorable, but actual. Declaratory judgment will not be rendered based on a possible or probable future contingency. Entry of a declaratory judgment under such circumstances is an erroneous advisory opinion which rules in a party's favor as to future litigation over the subject matter and must be vacated.

*Bailey v. City of Atlanta*, 296 Ga. App. 679, 682(1) (675 SE2d 564) (2009) (citation modified). See also *Cobb County v. Floam*, 319 Ga. 89 (901 SE2d 512) (2024) ("Courts are not vehicles for engaging in merely academic debates or deciding purely theoretical questions. We 'say what the law is' only as needed to resolve an actual controversy.")

15

(quotation marks omitted); OCGA § 9-4-2(a) ("In cases of actual controversy, the respective superior courts of this state ... shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration.").

PBG contends that it is an interested party because it is under contract to purchase property that it intends to develop for residential housing; and that there is an actual controversy because the validity of the impact fee ordinances will directly affect its costs, which "will make or break the decision to close." But this representation is not reflected in the allegations of the complaint, nor anywhere else in the record.[13] See *Morgan County Hosp. Auth. v. City of Madison*, 369 Ga. App. 739, 743(1) (894 SE2d 473) (2023) ("To secure a declaratory judgment, the plaintiff must show facts or circumstances whereby it is in a position of uncertainty or insecurity because of a dispute and of having to take some future action which is properly incident to its alleged right, and which future action without direction from the court might reasonably jeopardize its interest.").

---

[13] PBG fails to cite to the record to support its contention that its decision to close on the property depends on the court's determination as to the propriety of the ordinance.

16

Notably, PBG makes no claim that it is in a position of uncertainty, and thus seeking guidance, as to *whether it should* close on the property. Rather, PBG claims it "currently has real property under contract in Henry County that it intends to develop for single family homes. The County's improper development impact fees harm [its] ability to develop the property *after closing*." In other words, the allegations of the complaint presume the closing (as well as the harm) will occur at some later date. Thus, PBG fails to establish an actual controversy to warrant its challenge to the ordinances. See *Bd. of Nat. Res. v. Monroe County*, 252 Ga. App. 555, 557(1) (556 SE2d 834) (2001) ("To establish a legal interest sufficient to maintain standing under the Declaratory Judgment Act, a party must show that his rights are in direct issue or jeopardy."). Accord *Bailey*, 296 Ga. App. at 682(1).

Moreover, because PBG has not shown that it has taken any steps to develop the property, it has merely asserted a "possible or probable future contingency," which will not support a declaratory action. See *Monroe County*, 252 Ga. App. at 557-58(1) (county lacked standing to challenge environmental rules where there was no evidence the rules would "actually adversely affect its interests in any immediate or certain way," and where the only claim of harm "is a generalized economic interest

17

that is contingent upon future events."). Accordingly, PBG lacked standing to bring this claim. And, because any injunctive relief available under Paragraph V is dependent on a successful claim for declaratory judgment, PBJ's injunction claim is also foreclosed. Paragraph V(b)(1).

4. The County next contends that the trial court erred by concluding ResiBuilt was not required to exhaust its administrative remedies prior to bringing suit to challenge the validity of the ordinances. We agree.

> Long-standing Georgia law requires that a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision. Indeed, exhaustion is the usual rule whenever one aggrieved by an administrative decision seeks judicial relief of any sort from that decision, whether under the Administrative Procedure Act or in the form of an equitable remedy, an extraordinary remedy, or a declaratory judgment. Only in rare instances will the requirement of exhaustion be relaxed.

*Dunn v. City of Stonecrest*, 368 Ga. App. 736, 740-41(1) (890 SE2d 781) (2023) (citation modified). See also *Elbert County v. Sweet City Landfill*, 297 Ga. 429, 433(1) (774 SE2d 658) (2015) ("[R]equiring exhaustion of administrative remedies prevents unnecessary judicial intervention into local affairs and promotes judicial economy

18

because local authorities, unlike the court, have the power to grant the relief sought.") (citation modified). The failure to exhaust administrative remedies typically deprives the trial court of subject matter jurisdiction. *Dunn*, 368 Ga. App. at 741(1)(a).

Pursuant to OCGA § 36-71-10(a), a "county which adopts a development impact fee ordinance shall provide for administrative appeals to the governing body or such other body as designated in the ordinance of a determination of the development impact fees for a particular project." The statute further provides that developers may pay the impact fee under protest in order to pursue project approval or a building permit, and would not thus forfeit their right to appeal or repayment if the fees were deemed illegal. OCGA § 36-71-10(b).

The County provided for such an appeal process, under which a developer dissatisfied with a fee assessment could file a written appeal with the County administrator within 15 days of receiving the assessment; and, if dissatisfied with the administrator's decision, could — within 30 days of receiving the decision — appeal to the board of commissioners and present evidence at a hearing. Henry County Ordinance § 8.06.010.

(a) It is undisputed that ResiBuilt did not avail itself of the County's appeal process, despite paying the assessed fees. Nevertheless, the trial court concluded that ResiBuilt was not required to exhaust their administrative remedies under the limited exception found in *City of Atlanta v. Hotels.com*, 285 Ga. 231 (674 SE2d 898) (2009). But the determinative issue of that case is not reflected here.

In *Hotels.com*, several online travel booking companies ("OTCs") challenged the City's imposition of hotel taxes against their profits from their business model — the purchase and resale of hotel rooms. 285 Ga. at 232-33. Our Supreme Court held that the OTCs were not required to exhaust the administrative remedies because the underlying issue was whether the hotel tax ordinance applied to them at all. Id. at 233. The Court thus explained, "the exhaustion doctrine does not apply where the defect urged by the complaining party goes to the jurisdiction or power of the involved agency." Id. (citation modified) (citing *Cravey v. Southeastern Underwriters Ass'n*, 214 Ga. 450, 457(3) (105 SE2d 497) (1958)).

Here, ResiBuilt does not challenge the County's authority to impose impact fees, generally; instead, they allege that the County did not comply with procedural requirements in determining the amount of the fees. See *Ga. Dep't of Behav. Health*

*& Developmental Disabilities v. United Cerebral Palsy of Ga.*, 298 Ga. 779, 788(2)(b) (784 SE2d 781) (2016) ("[A]ggrieved parties cannot justify going straight to court merely by alleging that the agency failed to meet certain statutory procedural requirements. Long-standing Georgia law requires that a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision.") (citation modified); *We, the Taxpayers v. Bd. of Tax Assessors of Effingham County*, 292 Ga. 31, 34(1) (734 SE2d 373) (2012) ("[T]he mere claim that an administrative agency acted ultra vires does not authorize litigation before administrative remedies are exhausted. The plaintiff is required to allege that the agency had acted wholly outside its jurisdiction, not merely that it had failed to meet certain statutory procedural requirements.") (quotation marks omitted). The trial court thus erred in finding ResiBuilt was not required to exhaust their administrative remedies on this ground.

(b) Additionally, the trial court concluded that the exhaustion doctrine did not apply because OCGA § 36-71-10(a) is inadequate in that it limits appeals to disputes over impact fee assessments for individual projects — as opposed to a challenge to the legality of the applicable impact fee ordinance as a whole, as here. The trial court thus

narrowly interpreted the statute's mandate that a county establish an appeal process as to the "determination of the development impact fees for *a particular project*." OCGA § 36-71-10(a) (emphasis added).

However, this narrow interpretation conflicts with the Chapter's stated purpose of providing "minimum standards" to counties that adopt impact fee ordinances. OCGA § 36-71-1(b)(3). And, looking to the County's appeal process, it complies with OCGA § 36-71-10(a) in that it contains a standing requirement: the appeal must be brought by "applicants or feepayors who have already been assessed an impact fee." Henry County Ordinance § 8.06.010(A). See also *RNC*, 321 Ga. at 775(2); *Wasserman*, 320 Ga. at 640(II)(A)(2). Critically, there is no language in the ordinance that would limit the basis of the appeal. See, generally, Henry County Ordinance § 8.06.010. We fail to see how either the enabling statute or the applicable ordinance was inadequate to afford ResiBuilt the right to raise a claim challenging the legality of the ordinance.[14]

---

[14] To the extent ResiBuilt contends it was not required to exhaust its administrative remedies because (1) it would have been futile and (2) it was making a facial challenge, it did not make these arguments before the trial court, nor did the trial court address these arguments in its order. And we will not do so in the first instance. See *Ambrosio v. Giordano*, 358 Ga. App. 764, 769-70(3) (856 SE2d 349) (2021).

See *United Cerebral Palsy of Ga.*, 298 Ga. at 788(2)(b)*; We, the Taxpayers*, 292 Ga. at 34(1).

Because the trial court should have dismissed this action on jurisdictional grounds for the reasons set forth above, we reverse its grant of summary judgment to Appellees and its denial of the County's motion for summary judgment; we vacate its order to the extent it granted relief based on the merits; and we remand the case to the trial court with direction to dismiss this matter.

*Judgment reversed in part; vacated in part; and case remanded with direction. Doyle, P. J., and Padgett, J., concur.*