**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN, and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 2, 2023**

# In the Court of Appeals of Georgia

A23A0842. ELEMENTS DISTRIBUTION, LLC v. STATE OF
    GEORGIA.

MCFADDEN, Presiding Judge.

In February 2022, Gwinnett County law enforcement officers executed a search warrant upon a warehouse owned by Elements Distribution, LLC and seized business records, currency, and edible and nonedible products containing delta-8-tetrahydrocannibol ("delta-8-THC") and delta-10-tetrahydrocannibol ("delta-10-THC"). The warrant was issued upon the affidavit of a law enforcement officer that Elements had violated OCGA § 16-13-30 (b), which prohibits the possession of a controlled substance with the intent to distribute, by possessing and selling products containing delta-8-THC and delta-10-THC.

The state later conceded that the nonedible products containing delta-8-THC and delta-10-THC were not controlled substances, and it returned those products to Elements. But the state maintained that the edible products were controlled substances.

This case is Elements' attempt to obtain the return of the business records, currency, and edible products that were seized. It argues, among other things, that it is entitled to the return of these items because delta-8-THC and delta-10-THC are not controlled substances and so the allegation that Elements was in possession of and sold items containing those substances did not provide probable cause for the warrant. Given the state's concession that the nonedible products are not illegal despite containing delta-8-THC or delta-10-THC, we agree with Elements and reverse the trial court's order denying Elements' petition for the return of the seized items. So we do not address Elements' other arguments on appeal.

1. *Procedural history.*

The record shows that, on February 21, 2022, a police officer obtained a warrant to search Elements' warehouse and to seize, among other things, "any and all items related to the sale and distribution of marijuana to include products labeled as Delta-8, Delta-9 or Delta-10." In support of the warrant application, the officer

2

submitted an affidavit stating that, in the course of investigating another business, he learned that Elements had openly advertised the sale of and had sold products containing delta-8-THC and delta-10-THC. Based on that information, the officer asserted in his affidavit that "probable cause exists to believe Elements Distribution LLC is engaged in, and will continue to engage in, the sale and distribution of Delta-8/10 products, which are a schedule I controlled substance in the state of Georgia." The magistrate court that issued the warrant found probable cause of a violation of OCGA § 16-13-30 (b).

The next day, Gwinnett County law enforcement officers executed the warrant and seized business records, currency, and both edible and nonedible items containing delta-8-THC and delta-10-THC.

At the time of these events, the Gwinnett County district attorney had taken the position that it was illegal to possess or sell products containing delta-8-THC and delta-10-THC. Other businesses challenged that position in a case brought against the Gwinnett County district attorney in Fulton County, and on March 18, 2022, the Fulton County court granted a temporary restraining order barring, for 30 days, the district attorney "from directing her office or agents to initiate or continue any criminal enforcement action or civil asset forfeiture proceeding against any individual

3

or business based on their alleged possession, sale, or distribution of products containing hemp-derived cannabinoids, including but not limited to Delta-8-THC and Delta-10-THC." Before the temporary restraining order expired, the Fulton County court granted an interlocutory injunction with the same prohibition, to remain in effect while that case was pending.[1]

On April 5, 2022, the Gwinnett County district attorney filed an affidavit in the Fulton County case in which she stated that she had "advised [her] staff that *non-food products* containing less than .3% delta-9-THC, regardless of whether they contain delta-8-THC, delta-10-THC, or another cannabinoid," were not controlled substances. (Emphasis in original.) She stated that Gwinnett County law enforcement officers had seized from Elements "6,130 packages of Delta-8 and Delta-10 edibles [and] $271,253.00 in U. S. currency" but denied directing that seizure.

On April 21, 2022, the Gwinnett County district attorney returned to Elements all nonedible seized products, which Elements' counsel represented to the trial court

---

[1] After this appeal was docketed, our Supreme Court vacated the order granting the interlocutory injunction in the Fulton County case and held that the case must be dismissed on sovereign immunity grounds. *State of Ga. v. SASS Group*, 315 Ga. 893 (885 SE2d 761) (2023).

were the "vast majority" of the seized products. But despite Elements' requests, the district attorney did not return the other seized items.

On June 23, 2022, Elements filed this action in Gwinnett County, petitioning for the return of those items under either OCGA § 17-5-30 (a), which permits one "aggrieved by an unlawful search and seizure [to] move the court for the return of property," or OCGA § 9-16-7 (c), which permits one with an interest in seized property to request its release if certain procedural requirements for civil asset forfeiture have not been met. After an evidentiary hearing, the trial court entered an order denying Elements' petition. The trial court found that the items still held by the state were controlled substances, and thus illegal, because they did not fall within an exclusion for "hemp products" within Schedule I of the Georgia Controlled Substances Act. See OCGA § 16-13-25 (3) (P). The trial court also found that the statute governing civil asset forfeitures did not require the return of the items because, even though the state had not filed a complaint for forfeiture within the time period required by that statute, see OCGA § 9-16-7 (b) (2), this was due to the injunction in the Fulton County case.

As detailed below, we agree with Elements that it is entitled to the return of the seized items and currency because the warrant that authorized the seizure was not

5

supported by probable cause. So we do not address Elements' argument relating to the civil asset forfeiture procedures.

2. *The warrant authorizing the seizure of the items was not supported by probable cause.*

In this particular case, whether or not there was probable cause to support the warrant is a matter of statutory construction, so we have reviewed the trial court's ruling de novo. See *LaFontaine v. Signature Research*, 305 Ga. 107, 108 (823 SE2d 791) (2019) (matters of statutory construction are questions of law subject to de novo review). We conclude that the trial court erred in denying Elements' petition for the return of the seized items because the warrant authorizing the search of its warehouse and seizure of items therefrom was not supported by probable cause. See OCGA § 17-5-30 (a) (2) (permitting a party aggrieved by an unlawful search and seizure to move for the return of its property if there was not probable cause for the issuance of the warrant).

The warrant was based on a finding of probable cause for a violation of OCGA § 16-13-30 (b), which prohibits the possession of a controlled substance with the intent to distribute it. The officer seeking the warrant averred in his warrant affidavit

6

that Elements had violated that Code section by possessing and advertising for sale products that contained delta-8-THC and delta-10-THC.

The term "controlled substance" means "a drug, substance, or immediate precursor in Schedules I through V of [OCGA §§] 16-13-25 through 16-13-29 and Schedules I through V of 21 CFR Part 1308." OCGA § 16-13-21 (4). Schedule I expressly excludes tetrahydrocannabinol, or THC, "when found in hemp or hemp products as such terms are defined in [OCGA §] 2-23-3 [of the Georgia Hemp Farming Act]." OCGA § 16-13-25 (3) (P). OCGA § 2-23-3 defines "hemp" as "the Cannabis sativa L. plant and any part of such plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with the federally defined THC level for hemp or a lower level." OCGA § 2-23-3 (5). The "'[f]ederally defined THC level for hemp' means a delta-9-THC concentration of not more than 0.3 percent on a dry weight basis, or as defined in 7 U. S. C. Section 1639o, whichever is greater." OCGA § 2-23-3 (3). These statutes provide that a derivative of the Cannabis sativa L. plant is "hemp" and, therefore, not a controlled substance, unless it has more than a 0.3 percent concentration of delta-9-THC.

7

Delta-8-THC, delta-9-THC, and delta-10-THC are derivatives of the cannabis plant. See Lisa Moran McMurdo, *Judicial and Legislative Updates: Cannabis Law*, 57 U. Rich. L. Rev. 9, 34 (IV) (E) (2022). They have different chemical structures, based on the location of a carbon-carbon double bond. See, e. g., *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F4th 682, 686 (I) (A) (9th Cir. 2022); W. Michael Schuster, *Cannabis Derivatives and Trademark Legislation: The Case of Delta-8-THC*, 98 Ind. L. J. 177, 186 (I) (C) (2022).

The state does not argue in this case that the statutory definition of "hemp" excludes delta-8-THC or delta-10-THC. Instead, the state takes the position that delta-8-THC and delta-10-THC are not themselves controlled substances. It asserts in its appellate brief that, at the trial court hearing on Elements' petition, it "conceded that non-food substances containing Delta-8 and Delta-10 were legal[.]"

So for the purpose of our analysis we will assume that the derivatives delta-8-THC and delta-10-THC fall within the statutory definition of "hemp" unless they also have more than a 0.3 percent concentration of delta-9-THC.[2] The state has neither

_____

[2] We note that it is unsettled whether delta-8-THC or delta-10-THC that has been synthetically derived from the cannabis plant would fall within similar definitions of "hemp." See, e. g., *AK Futures LLC*, 35 F4th at 690-691 (III) (B) (1) (the plain meaning of the federal definition of "hemp" in 7 USC § 1639o (1) encompasses delta-8-THC products that contain no more than 0.3 percent delta-9-

argued nor shown that any of the edible products in this case containing delta-8-THC or delta-10-THC also had more than a 0.3 percent concentration of delta-9-THC.

Instead, the state argues that, even though delta-8-THC and delta-10-THC are not themselves controlled substances, edible products containing them *are* controlled substances unless those products also meet the definition of "hemp products" under OCGA § 2-23-3 of the Georgia Hemp Farming Act. That Act, which does not impose criminal liability but concerns the cultivation and processing of hemp for commercial purposes, see OCGA § 2-23-2, defines "hemp products" to exclude "food products infused with THC unless approved by the United States Food and Drug Administration." OCGA § 2-23-3 (6).

---

THC); *Bio Gen, LLC v. Sanders*, 2023 U. S. Dist. LEXIS 158785, 2023 WL 5804185 (E. D. Ark., Sept. 7, 2023) (holding that whether delta-8-THC is derived synthetically does not affect whether it falls within the federal definition of "hemp" in 7 USC § 1639o); *United States v. Rice*, 2023 U. S. Dist. LEXIS 108149, 2023 WL 4086278 (W. D. Pa., June 20, 2023) (noting that the U. S. Drug Enforcement Administration takes the position that delta-8-THC falls outside of the definition of "hemp" because it can only be obtained synthetically and predicting that the DEA would take the same position regarding delta-10-THC); *United States v. Plancarte*, 2023 U. S. Dist. LEXIS 91812, 2023 WL 3944888 (W. D. Wis., Feb. 10, 2023) ("A gray area is whether Delta-8 THC is legal; it probably is when it occurs naturally in hemp, but this is not clear."). The parties do not argue this issue, which is an issue of first impression in Georgia, so given the state's concession that the "non-food substances containing Delta-8 and Delta-10 were legal," we do not decide this issue here.

9

The state's argument has no merit. Schedule I's "hemp product" exclusion is not the only way an item containing THC can fall outside the definition of a controlled substance. The plain language of OCGA § 16-13-25 (3) (P) excludes THC from Schedule I "when found in hemp *or* hemp products. . . ." (Emphasis supplied.) "Or" is used here as a disjunctive. When used as a disjunctive, "the word 'or' is usually interpreted as being inclusive, thereby expanding the statute's coverage." *Mathis v. State*, 336 Ga. App. 257, 260 (784 SE2d 98) (2016). So as used here "or" expands the scope of the exclusion.

Moreover, even if the edible products seized from Elements are not themselves "hemp products" as defined in the Georgia Hemp Farming Act, they do not contain any controlled substances; they are alleged to contain only delta-8-THC or delta-10-THC, which the state concedes are not controlled substances. And if the products contain no controlled substances, then there is no statutory basis for treating them as controlled substances. Such products will not support criminal liability for possession or sale of a controlled substance under OCGA § 16-13-30 (b), whether or not they are considered "hemp products" under OCGA § 2-23-3.

The state argues that this statutory construction renders meaningless the definition of "hemp products" in the Georgia Hemp Farming Act, OCGA § 2-23-3

10

(6). We disagree. That Act distinguishes hemp products from hemp. It contains provisions specific to "hemp," such as provisions concerning the testing of hemp samples and disposal of hemp if the test sample reveals a certain delta-9-THC concentration, OCGA § 9-23-8 (a). And it contains provisions specific to "hemp products," such as a provision requiring the separate storage of hemp products from other products produced at the same facility, OCGA § 2-23-4 (c)). For the purpose of determining whether a product containing THC is a controlled substance under Schedule I, however, these distinctions do not matter, because the statutory exclusion applies to THC "found in hemp *or* hemp products. . . ." OCGA § 16-13-25 (3) (P) (emphasis supplied).

Morover the state's reading of the Georgia Hemp Farming Act is inconsistent with the General Assembly's express intent by that Act to:

> (1) Promote exploration of the cultivation and processing of hemp and the potential to open up new commercial markets for farmers and businesses through the sale of hemp products;

> (2) Explore expansion of the state's hemp industry and allow farmers and businesses to begin to cultivate, handle, and process hemp and sell hemp products for commercial purposes;

11

(3) Encourage and empower research into growing hemp and creating hemp products at universities and in the private sector;

(4) Ultimately move the state and its citizens to the forefront of the hemp industry;

(5) Balance the desire to explore the cultivation and processing of hemp with public health, safety, and welfare regarding the potential for unwanted and unlawful uses of chemical elements of hemp; and

(6) Enable the department, licensees, and universities to promote the cultivation and processing of hemp and the commercial sale of hemp products.

OCGA § 2-23-2.

Because the warrant in this case was based on an assertion that Elements was in possession of and selling products containing delta-8-THC and delta-10-THC, which the state concedes are not themselves controlled substances, the warrant was not supported by probable cause. So Elements was entitled to the return of its property and the trial court erred in denying Elements' petition for that return.

Given this disposition, we do not address Elements' other claims of error.

12

*Judgment reversed. Markle, J., concurs in judgment only; Brown, J., concurs in judgment only and writes specially.*

A23A0842. ELEMENTS DISTRIBUTION, LLC v. STATE OF

GEORGIA


BROWN, Judge, concurring.

I concur in the judgment only. As two of the judges on the three-judge panel deciding this case have not fully concurred with the rationale of the majority opinion, it is not binding precedent. See Court of Appeals Rule 33.2 (a) (1).