**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 23, 2024**

# In the Court of Appeals of Georgia

A24A1088. SOUTH RIVER WATERSHED ALLIANCE et al v. DEKALB COUNTY et al.

LAND, Judge.

In 2021, DeKalb County closed on a deal to swap land used as a public park with land owned by Blackhall Real Estate Phase II ("Blackhall") (collectively, "Appellees") so that Blackhall could develop the park land for its own purposes and DeKalb County could create a new public park. South River Watershed Alliance, South River Forest Coalition and their members, a group of several citizens, residents and taxpayers of DeKalb Counties (collectively, "Appellants") filed suit, alleging that the land swap deal was an ultra vires act and seeking declaratory, injunctive, and mandamus relief. In pursuing their lawsuit, Appellants relied, in part, on Article I, Section II, Paragraph V of Georgia's Constitution ("Paragraph V"), which was

adopted in 2020 and waived sovereign immunity for certain lawsuits, including those lawsuits against a county for declaratory judgment and related injunctive relief. The trial court granted summary judgment in favor of Appellees on the grounds that the lawsuit was, in part, barred by sovereign immunity. Because we find that Paragraph V requires dismissal of this entire action such that a ruling on the merits via summary judgment is unwarranted, we vacate the trial court's order and remand the case to the trial court for entry of an order dismissing the action.

The facts show that in 2003, DeKalb County purchased approximately 136 acres of land at the intersection of Constitution Road and West Side Place in unincorporated southwest DeKalb County. A portion of the purchase proceeds came from a grant by the Trust for Public Land ("TPL") funded by the Arthur M. Blank Family Foundation (the "Blank Foundation"). There are only two parties to the 2003 deed conveying the land (the "Vesting Deed"): TPL, as grantor, and "DeKalb County, a political subdivision of the State of Georgia," as grantee. The land conveyed by the Vesting Deed eventually became Intrenchment Creek Park (the "Park").

The Vesting Deed provides that the land is conveyed subject to a "covenant and use restriction that it shall be used in perpetuity as park property" including green space, passive recreation, and active recreation (the "Use Restriction"). The Vesting Deed also provides that the Use Restriction "is imposed in favor of and for the benefit of the Property so held by [DeKalb County] for the use of the public. . . in accordance with the provisions of OCGA § 44-5-60 (c)." Finally, the Vesting Deed provides that "[b]oth (i) the [Blank Foundation], in consideration of its grant awarded towards the purchase of the Property for a public park, as well as (ii) any member of the general public who utilizes the Property, shall have the right to take any action necessary at law or in equity to enforce the [Use Restriction] contained herein."

In 2018, DeKalb County was approached by representatives of Blackhall about a potential land exchange involving county land at Intrenchment Creek Park and a nearby parcel of land owned by Blackhall. The DeKalb County Department of Recreation, Parks and Cultural Affairs (the "Parks Department") conducted initial due diligence on the proposal and determined that the land exchange potentially offered benefits to DeKalb County but that the Vesting Deed's Use Restriction made the transaction impossible unless it was released by TPL (the original grantor of the

3

Vesting Deed) and the Blank Foundation ( a partial funding source for the original purchase).

Between late 2018 and early 2020, DeKalb County negotiated with Blackhall, TPL and the Blank Foundation regarding the proposed land exchange and the conditions upon which TPL and the Blank Foundation would release the Use Restriction. Throughout this period, Appellants began to organize against the proposed land exchange under the name "Stop the Swap," and began to discuss initiating litigation. They also began to pressure TPL to refuse to release the Use Restriction.

In February 2020, the DeKalb County Board of Commissioners voted to authorize the DeKalb County Chief Operating Officer to finalize a real estate exchange agreement, complete due diligence, and return to the commission to consider all necessary documents in connection with a possible future real estate closing of the land exchange. In February 2020, DeKalb County received appraisals from the Valbridge Group (the "2020 Valbridge Appraisals") valuing DeKalb County's 40 acres in the Park at $2,800,000 and Blackhall's 52.9 acres of adjacent land at $3,200,000.

On October 13, 2020, the DeKalb County Board of Commissioners authorized, by majority vote, a land exchange of approximately 40 acres of land in the Park for approximately 52.9 acres of adjacent property owned by Blackhall along with Blackhall making $1,500,000 in park improvements and paying $100,000 cash. Following the approval by the Board of Commissioners, DeKalb County's staff and legal department worked to finalize the land exchange transaction and ran the required legal notice for the land exchange.

In January 2021, Valbridge performed a supplemental appraisal that was sent to DeKalb County confirming the values in the earlier appraisals. DeKalb County then held a final public meeting regarding the land exchange via Zoom with a simultaneous broadcast available online and on local television.

The land exchange closed on January 29, 2021, and a number of documents and agreements were executed on that date, including deeds releasing the Use Restriction by TPL and the Blank Foundation and deeds exchanging the land between Blackhall and DeKalb County.

On February 21, 2021, three months after the Board of Commissioners approved the land exchange and three weeks after the deal closed, Appellants filed a

lawsuit. Appellant's complaint challenged the land swap as ultra vires and sought the following relief: (1) a declaratory judgment that the January 29, 2021 land swap was void and invalid; (2) a writ of mandamus directing DeKalb County to hold and maintain the Park property as public park land for the public's use and benefit until DeKalb County obtains a referendum authorizing the abandonment of the Park; and (3) an injunction prohibiting DeKalb County from exchanging the Park and from developing the Park for any use other than a public park until a public referendum authorizes these acts. The trial court denied DeKalb County's motion to dismiss the complaint in its entirety and granted Blackhall's motion to dismiss the Appellants' claims against it for a declaratory judgment that it violated the required protocol to dispose of county-owned land as set forth in OCGA § 36-9-3 (A) (3) (D).

In May 2023, after the conclusion of discovery, DeKalb and Blackhall moved for summary judgment as to all remaining claims. Appellants also moved for summary judgment. After oral argument, the trial court granted DeKalb County and Blackhall's motion for summary judgment and denied Appellants' motion for summary judgment. This appeal followed.

Because sovereign immunity is a threshold jurisdictional issue, it must be decided before addressing the merits of the Appellants' claims. *Bray v. Watkins*, 317 Ga. 703, 704 (895 SE2d 282) (2023). The trial court's order granting summary judgment held that Appellants' claims for declaratory judgment and injunctive relief were barred by sovereign immunity under Paragraph V of the Georgia Constitution and our Supreme Court's recent holding in *State v. SASS Group, LLC*, 315 Ga. 893 (885 SE2d 761) (2023). Appellants argue that this finding was in error. We conclude that Appellants' lawsuit is in fact barred by sovereign immunity and that dismissal, not summary judgment, is the appropriate disposition of the action. We accordingly vacate the trial court's summary judgment order and remand the case for entry of a dismissal order.

The Georgia Constitution extends sovereign immunity "to the state and all of its departments and agencies, which includes counties." (Punctuation and footnote omitted.) *DeKalb State Court Probation Dept. v. Currid*, 287 Ga. App. 649, 651 (1) (653 SE2d 90) (2007). See also Ga. Const. 1983 Art. I, Sec. 2, Para. IX (e); OCGA § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute"). Under the Georgia Constitution, sovereign immunity "can only be waived by an Act

of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." (Punctuation and footnote omitted.) *DeKalb State Court Probation Dept.*, 287 Ga. at 651 (1).

In 2020, Georgia amended its Constitution to provide a "limited waiver of sovereign immunity for actions in the superior court seeking declaratory relief from acts of the state [] or state entities specifically listed in [Ga. Const. 1983, Art. I, Sec. II, Para. V] ("Paragraph V")." (Citation and punctuation omitted.) *Lovell v. Raffensperger*, 318 Ga. 48, 50 (2) (a) (897 SE2d 440) (2024). Paragraph V provides, in relevant part,

> (b) (1) Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of the state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof or any county, consolidated government, or municipality of this state or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. . . . Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.

> (b) (2) . . . Actions filed pursuant to this Paragraph against any county, consolidated government, or municipality of the state or officer or

8

employee thereof shall be brought exclusively against such county, consolidated government, or municipality and in the name of such county, consolidated government, or municipality. Actions filed pursuant to this Paragraph naming as a defendant any individual, officer, or entity other than as expressly authorized under this Paragraph shall be dismissed.

Ga. Const. of 1983, Art. I, Sect. II, Para. V (b).[1]

In order to take advantage of Paragraph V's limited waiver of sovereign immunity against a county, a plaintiff must comply with the exclusivity provision in Paragraph V (b) (2), which provides in relevant part that

[a]ctions filed pursuant to [Paragraph V] against any county . . . shall be brought *exclusively* against such county. . . in the name of such county. Actions filed pursuant to [Paragraph V] naming as a defendant any individual, officer or entity other than as expressly authorized under this paragraph *shall be dismissed.*

(Emphasis supplied.) Ga. Const. of 1983, Art. I, Sect. 2, Para. V (b) (2). Our Supreme Court recently held that if a lawsuit does not comply with this exclusivity requirement, "then the entire lawsuit must be dismissed, even if some claims within the lawsuit

---

[1] Appellants urged at the motion to dismiss stage that the "act" at issue in this case was the formal transfer of deeds on January 29, 2021. The parties do not dispute this fact on appeal.

could have otherwise been brought on their own without relying on Paragraph V's waiver." (Citation and punctuation omitted.) *Lovell*, 318 Ga. at 50 (2) (a).[2] See also id. at 53 (2) (b) (complaints against the Secretary of State and county boards of elections and their individual members were properly dismissed due to failure to comply with Paragraph V's exclusivity requirement); *SASS Group*, 315 Ga. at 897-905 (II) (dismissing lawsuit filed against the State of Georgia and county district attorney in her individual capacity when the lawsuit sought declaratory and injunctive relief).

Here, the Appellants' complaint violates Paragraph V's exclusivity provision by naming DeKalb County and "Blackhall Real Estate Phase II, LLC" as defendants. Appellants argue that there are no published cases applying the exclusivity provision to a lawsuit filed against a county and a private entity that is also a necessary and indispensable party to the action. That may be true, but we are bound by our Supreme Court's clear ruling that the exclusivity provision "means

---

[2] Appellants argue that we need not address whether the waiver of sovereign immunity under Paragraph V applies because some of their claims fall under the waiver of sovereign immunity for ex contractu actions. See Ga. Const. of 1983, Art I. Sect. II, Para. IX (c). However, because some of Appellants's claims against DeKalb County rely "at least partially, on Paragraph V's limited waiver of sovereign immunity in pursuing their actions, Appellants filed their actions pursuant to Paragraph V" and the entire action must be dismissed for failure to comply with its mandates. *Lovell*, 318 Ga. at 50 (2) (a).

what it says: actions filed pursuant to Paragraph V must name as a defendant *only* the State of Georgia (or the relevant local government) or the action shall be dismissed." (Citation omitted; emphasis in original.) *First Center, Inc. v. Cobb County*, 318 Ga. 271, 271 (897 SE2d 854) (2024). See also *State v. SisterSong Women of Color Reproductive Justice Collective*, 317 Ga. 528, 534 (2) (b) (894 SE2d 1) (2023) ("courts are bound by written constitutions") (citation and punctuation omitted).

Although the trial court properly concluded that sovereign immunity applies here, its grant of summary judgment was not the proper disposition. Rather, "the case was due to be dismissed in its entirety on the basis that Appellants' suit against [DeKalb] County" was barred by sovereign immunity because of its violation of the exclusivity provision of Paragraph V. See *Bray v. Watkins*, 370 Ga. App. 299, 299 (896 SE2d 913) (2024) (trial court erred by granting summary judgment before addressing the threshold jurisdictional question of whether sovereign immunity barred plaintiff's claims); *First Center,*, 318 Ga. at 272 ("the trial court should have first considered the jurisdictional issue of sovereign immunity before reaching the other grounds raised in Appellees' motion to dismiss"). Accordingly, we vacate the trial court's summary judgment order and remand this case to the trial court to enter an order dismissing

11

Appellants' complaint as barred by sovereign immunity. See e. g. *Ga. Association of Professional Process Servers v. Jackson*, 302 Ga. 309, 312 (1) (806 SE2d 550) (2017), superseded by statute on other grounds by *Brock v. Hardman*, 303 Ga. 729, 730 (1) (814 SE2d 736) (2018).

*Judgment vacated and case remanded with direction. Miller, P. J., and Markle, J., concur.*